IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GUSTAVO MERCADO MURILLO,

        Petitioner,

v.

DON MILLS,

        Respondent.

Civil No. 2:12-cv-01969-AC

FINDINGS AND RECOMMENDATION

GUSTAVO MERCADO MURILLO
SID #17358907
Two Rivers Correctional Institution
82911 Beach Access Road
Umatilla, OR 97882

        Petitioner *Pro Se*

ELLEN F. ROSENBLOOM
Attorney General
NICHOLAS M. KALLSTROM
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

        Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Two Rivers Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254 *pro se*.[1] For the reasons that follow, the Amended Petition for Writ of Habeas Corpus should be DENIED.

## BACKGROUND

On June 20, 2008, Petitioner pleaded no contest in Yamhill County to five counts of Sodomy in the First Degree, one count of Unlawful Sexual Penetration in the First Degree, one count of Rape in the First Degree, and one count of Sexual Abuse in the First Degree. Resp. Exh. 104. The charges arose when five different children in Petitioner's extended family accused Petitioner of repeatedly sexually abusing them while they were at his home for day care. Resp. Exh. 106, pp. 12-18. The plea petitions signed by Petitioner provided that Petitioner would be sentenced to a total of no more than 900 months of incarceration. Resp. Exh. 104. Following a plea hearing, the trial judge accepted the plea and imposed sentence in conformance with the parties' agreement. Resp. Exh. 101. Petitioner did not seek a direct appeal.

On April 1, 2009, Petitioner filed a *pro se* petition for state post-conviction relief ("PCR"). Resp. Exh. 107. Petitioner alleged trial counsel was ineffective in two respects: (1) failing to interview the mother of one of the victims, alleging that the mother told Petitioner's wife "that the story was not true and that she felt bad for the petitioner," and (2) failing to hire a medical expert to challenge the charge of Unlawful Sexual Penetration. Resp. Exh. 107, pp. 4-5.

---

[1]The Court initially appointed counsel to represent Petitioner, but subsequently granted counsel's motion to withdraw and allowed Petitioner to proceed *pro se*.

2 - FINDINGS AND RECOMMENDATION -

The state moved to dismiss the PCR petition, arguing that Petitioner had failed to comply with the statutory pleading requirements of Or. Rev. Stat. § 138.580, which requires a PCR petitioner to attach to the petition evidence supporting his claims. Because Petitioner failed to attach any supporting documentation to his petition, the State argued the petition should be dismissed. Resp. Exh. 111.

The PCR trial court appointed counsel to represent Petitioner. PCR counsel reviewed trial counsel's file, the police reports, a psychosexual evaluation of Petitioner, the plea petitions, and the transcript of the plea hearing. Resp. Exh. 108, p. 2. He also reviewed the medical examinations of the victims from CARES Northwest, as well as the victim interviews. Resp. Exh. 108, p. 2. PCR counsel hired an investigator to locate and interview the mother of one of the victims, but the effort was unsuccessful because that person was no longer in the area and was presumed to have been deported to Mexico. Resp. Exh. 108, p. 3. Counsel also secured the services of a qualified medical expert to review the victims' medical records, and received and reviewed a report from that expert. Resp. Exh. 108, p. 3. After completing his investigation, PCR counsel opined that the original petition could not be construed to state a viable legal ground for relief under the Oregon PCR statutes, and could not be amended to state a viable claim for relief. Resp. Exh. 108, p. 3. As such, counsel declined to amend the PCR petition.

Following a hearing, the PCR trial judge granted the state's motion and dismissed the PCR petition with prejudice. Resp. Exh. 114. On appeal, Petitioner's counsel filed a brief under *State v. Balfour*, 311 Or. 434, 814 P.2d 1069 (1991).[2] Petitioner filed a "Section B" brief in which he

---

[2]The *Balfour* procedure provides that counsel need not ethically withdraw when faced with only frivolous issues. Rather, the attorney may file Section A of an appellant's brief containing a

3 - FINDINGS AND RECOMMENDATION -

argued the PCR court erred in not conducting a hearing on the merits of his PCR petition. Resp. Exh. 115. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Murillo v. Franke*, 248 Or. App. 755, 275 P.3d 1017, *rev. denied*, 352 Or. 265, 286 P.3d 1230 (2012).

On November 2, 2012, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, alleging eight grounds for relief. Subsequently, Petitioner filed a motion to amend his habeas petition, seeking leave to add a ninth ground for relief. Respondent did not object to the amendment, but reserved all procedural defenses, and the Court granted Petitioner's motion. Currently before the Court is the Amended Petition for Writ of Habeas Corpus, which alleges the following grounds for relief:

> **Ground One:** Ineffective assistance of trial counsel for failure to fully investigate petitioner's defense.
> **Supporting Facts:** The mother of one of the alleged victims in this case had told petitioner's wife that she was sorry for what was happening because the stories were not true. This witness was not interviewed, even though petitioner repeatedly told his counsel about the availability. Had trial counsel followed up on this petitioner would not have accepted the deal that he did.
>
> **Ground Two:** Ineffective assistance of trial counsel for failure to procure a medical expert to assist in the defense.
> **Supporting Facts:** Trial counsel failed to consult or retain a medical expert to contradict the victims' statements, and offer proof that the stories that they were telling were not true based on medical science. Had trial counsel had such an expert available, he would not have pled guilty.
>
> **Ground Three:** Ineffective assistance of trial counsel in regards to petitioner's plea of guilty not being made voluntarily.

---

statement of the case sufficient to "apprise the appellate court of the jurisdictional basis for the appeal." *Balfour*, 311 Or. at 451. The petitioner may then file the Section B segment of the brief containing any assignments of error he wishes. *Id.* at 452.

4 - FINDINGS AND RECOMMENDATION -

**Supporting Facts:** Petitioner pled no contest in exchange for a sentence of 900 months in prison. This is a life sentence. Petitioner would not have received any different sentence had he proceeded to trial and lost on every count. The number of months petitioner receives is irrelevant when he will die in prison as a result of the sentence. Petitioner met with his attorney only a few times, and was forced into taking the deal after he had not even understood the charges, or the ramifications of a plea of no contest.

**Ground Four:** Ineffective assistance of trial counsel for failure to ensure that petitioner understood the ramifications of his plea.
**Supporting Facts:** Petitioner did not even know that he was sentenced to such a long time in prison until after he arrived at the prison and was informed by the legal assistant at the law library. Petitioner had no idea he was accepting a deal for 900 months. Petitioner does not speak English, and although trial counsel may believe she informed him, she did not, and all communications were done though an interpreter. There was no evidence to controvert petitioner's statement that he did not understand the totality of the plea.

**Ground Five:** Denial of Federal due process rights in regards to not allowing a hearing on petitioner's petition for post-conviction relief.
**Supporting Facts:** Petitioner filed a petition for post-conviction relief, arguing ineffective assistance of trial counsel. That petition was dismissed with prejudice, after appointed counsel filed an affidavit stating he did not believe that petitioner's petition had any merit. Due process requires that the state court at a minimum allow a hearing, and an opportunity to present evidence and speak on petitioner's own behalf. None of those things were afforded petitioner, and this court should allow petitioner a full evidentiary hearing as there are no state court findings made, nor any opportunity for petitioner to argue his case.

**Ground Six:** Ineffective assistance of post-conviction counsel, amounting to a complete and total denial of counsel at a critical stage of the proceeding.
**Supporting Facts:** Petitioner's post-conviction counsel filed an affidavit with the post-conviction court arguing that petitioner had no basis for post-conviction relief, essentially arguing against his own client before the tribunal. This resulted in petitioner's attorney becoming an arm of the state. This is beyond ineffective assistance, this amounts to a denial at a critical stage, and this court should grant a full hearing and either forgive any defaulted issues, or in the alternative send the case back to the state court with instructions to allow a full hearing to determine whether petitioner's plea was made freely, knowingly, and voluntarily, and to determine if a sentence of life in prison was cruel and unusual under both the state and federal constitutions.

**Ground Seven:** Petitioner's sentence was cruel and unusual in violation of petitioner's federal and state constitutional right against cruel and unusual sentences.
**Supporting Facts:** Petitioner received a sentence of 75 years in prison. This is not a murder case, in fact no one died in any fashion. A sentence of life in prison without any chance of parole is cruel and unusual based on the facts of this case. Further, the length of the sentence further demonstrates that petitioner's plea was not made freely, knowingly, and voluntarily.

**Ground Eight:** Violation of Federal due process rights in the appeal state of petitioner's state post-conviction because Oregon's *"Balfour"* procedure is unconstitutional in that it does not allow a two-tiered review.
**Supporting Facts:** Petitioner's appointed appellate counsel did not file any brief on petitioner's behalf, instead he filed a statement with the appellate court that he felt petitioner had no issues and informed petitioner that any argument that was to be made before the court of appeals petitioner would have to make on his own. Further, petitioner sent his appellate counsel a brief, asked him to fix the obvious blemishes and formal errors, appellate counsel did not even do that as required by statute, he merely filed it with the court, in its nearly unreadable format. This was insufficient as a matter of Federal constitutional requirements to afford petitioner a full and fair hearing before all stages of the Oregon courts.

**Ground Nine:** Petitioner's original trial counsel, Ms. Jan Marie Dielschneider, suffered from an actual conflict of interest which caused her to act in opposition to the best interests of her client.
**Supporting Facts:** Petitioner suffers from renal disease. He receives three weekly dialysis treatments in order to stay alive. At the time of the alleged crimes, petitioner's arrest and subsequent pretrial incarceration, he was receiving kidney dialysis treatments. . . . [T]he defense attorney deceived and pressured petitioner into accepting a plea deal that was not in his best interest in order to spare Yamhill County the crippling medical expenses for Petitioner's dialysis. The attorney chose between the interests of the jail budget and her client's interest in receiving a vigorous defense which would have included using delay as a tactic to obtain more favorable terms in any guilty plea.

Respondent argues Petitioner procedurally defaulted the claims alleged in Grounds One, Two, Three, Four, Seven, and Eight. Respondent also argues that Petitioner fails to state a claim upon which relief may be granted under § 2254 in Grounds Five and Six. With respect to Ground Nine, Respondent argues the claim is barred by the statute of limitations.

6 - FINDINGS AND RECOMMENDATION -

## DISCUSSION

I.  **Procedurally Defaulted Claims - Grounds One, Two, Three, Four, and Seven**

Respondent asserts Petitioner procedurally defaulted the claims alleged in Grounds One, Two, Three, Four, and Seven. Petitioner does not dispute that the claims are procedurally defaulted, but argues he should be excused from his default because of the ineffective assistance of post-conviction counsel exception outlined in *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012).

A.  **Legal Standards**

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A). A state prisoner satisfies the exhaustion requirement by "fairly presenting" his claim to the appropriate state courts at all appellate stages afforded under state law, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

If a federal constitutional claim is expressly rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Cook v. Schriro*, 538 F.3d 1000, 1025 (2008), *cert. denied*, 555 U.S. 1141 (2009). Under the independent and adequate state rule doctrine, federal habeas review is prohibited when a state court declined to

7 - FINDINGS AND RECOMMENDATION -

address a prisoner's federal claims on the ground that the prisoner failed to meet a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977).

When a petitioner procedurally defaults his federal claims, federal habeas corpus review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice.[3] *Coleman*, 501 U.S. at 750. In order to demonstrate "cause," a petitioner must show that some objective factor external to the defense impeded his efforts to raise the claim in state court. *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998), *cert. denied*, 525 U.S. 1073 (1999). "Prejudice," in turn, is actual harm resulting from the alleged constitutional violation. *Vickers*, 144 F.3d at 617.

"Traditionally, the ineffective performance of PCR trial counsel could not be used to establish cause and prejudice to excuse a procedural default." *Erickson v. Coursey*, Case No. 2:12-cv-01466-BR, 2015 WL 1401522, *8 (D. Or., March 22, 2015) (citing *Coleman*, 501 U.S. at 753, *Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987)). In *Martinez v. Ryan*, however, the Supreme Court carved out a narrow exception to the general rule, holding that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," provided that the defaulted claim is "substantial." *Martinez*, 132 S. Ct. at 1315.

To invoke this narrow exception, a habeas petitioner must persuade the court that: (1) his ineffective assistance of trial counsel claims are "substantial;" (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the PCR proceeding; (3) the state PCR

---

[3]Procedural default of available state remedies may also be excused where the failure to consider the claims will result in a miscarriage of justice on a colorable showing of actual innocence. *McQuiggen v. Perkins*, 133 S. Ct. 1924, 1928 (2013); *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995). Petitioner does not argue actual innocence to excuse his procedural default.

proceeding was the "initial" review proceeding; and (4) state law requires that an ineffective assistance of counsel claim be raised in an initial-review proceeding. *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318-19).

Only the first two factors are at issue here. *See Sexton v. Cozner*, 679 F.3d 1150 (9th Cir. 2012) (in Oregon, claims of ineffective assistance of trial counsel must be rased in initial-review collateral proceedings), *cert. denied*, 133 S. Ct. 863 (2013). Thus, in order for this Court to proceed to the merits of Petitioner's ineffective assistance of counsel claims, Petitioner must (1) demonstrate that his "'underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say . . . the claim has some merit[,]" and (2) establish that post-conviction counsel was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) (quoting *Martinez*, 132 S. Ct. at 1318).

A claim must be examined under the two-part test set out in *Strickland* to determine whether it is substantial. Pursuant to that test, Petitioner must show both (1) that the attorney's performance fell bellow an objective standard of reasonableness; and (2) that the performance prejudiced the defense. *Strickland*, 466 U.S. at 667, 688. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, or what "might be considered sound trial strategy." *Id.* at 689. Reasonableness is judged as of the time of counsel's conduct, not in hindsight. *Id.* at 689-90. A defendant is prejudiced by counsel's poor performance if "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. To show prejudice based on deficient performance of counsel in a case where, as here, the Petitioner pleaded guilty, the petitioner "must show that there

is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The question whether an ineffective assistance of trial counsel claim is "substantial" under *Martinez* is not the same as a merits review; rather, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining whether a certificate of appealability should issue. *See Martinez*, 132 S. Ct. at 1318-19. Therefore, a court may conclude that a claim is substantial when a petitioner has shown that resolution of the merits of the *Strickland* claim would be "debatable amongst jurists of reason" or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). Thus, to determine whether a claim is substantial, *Martinez* requires the court to *review* but not *determine* whether trial counsel's acts or omissions resulted in deficient performance and in a reasonable probability of prejudice, and to *determine* only whether resolution of the merits of the ineffective assistance of counsel claim would be debatable among jurists of reason and whether the issues are deserving enough to encourage further pursuit of them.

The substantiality of the claim and the ineffectiveness of post-conviction counsel factors are interwoven because "[if] the claim of ineffective assistance of [trial] counsel is implausible, then there could not be a reasonable probability that the result of the post-conviction proceedings would have been different." *Clabourne*, 745 F.3d at 377. Additionally, "[i]f trial counsel was not ineffective, then [petitioner] would not be able to show that PCR counsel's failure to raise claims of ineffective assistance of trial counsel was such a serious error that PCR trial counsel 'was not

functioning as the "counsel" guaranteed' by the Sixth Amendment." *Sexton*, 679 F.3d at 1159 (quoting *Strickland*, 466 U.S. at 687).

B.  **Discussion**

   1.  **Grounds One, Two, Three, and Four - Ineffective Assistance of Counsel Claims**

In Ground One, Petitioner alleges trial counsel was ineffective for failing to fully investigate Petitioner's defense. Petitioner alleges that despite his repeated requests counsel declined to interview the mother of a child victim who "told petitioner's wife that she was sorry for what was happening because the stories were not true."

Petitioner has not identified this witness, nor has he presented any evidence that this witness would have been available to offer admissible testimony that would have supported a defense to the charges against him. In an affidavit prepared by trial counsel in response to Petitioner's claims, counsel states:

> Because [Petitioner] does not name this person or this person's child, it is difficult to respond to this allegation. However, I can say that after my appointment I reviewed each page of discovery provided by the State with [Petitioner] with the aide [sic] of court certified interpreters. I always ask my clients whether there is anyone that could be a favorable witnesses on their behalf. [Petitioner] did not indicate there were any [let] alone provide me with the name of such witness.

Resp. Exh. 122, p. 2. Moreover, in Petitioner's PCR proceeding, PCR counsel stated:

> After a thorough review of the case, I was able to determine that an investigator could be helpful to assist me in this matter. . . . I was able to obtain the services of a Spanish-speaking investigator from the McMinnville area who made contact with Petitioner's mother to attempt to check out one of the allegations made in [Petitioner's] Pro Se Petition. That effort was unsuccessful in that although the investigator was able to talk to the Petitioner's wife, the individual who allegedly made a statement to her concerning the victims was no longer in the area and was presumed to have been deported to Mexico.

11 - FINDINGS AND RECOMMENDATION -

Resp. Exh. 108, p. 3.

In Ground Two, Petitioner alleges that trial counsel failed to consult a medical expert to assist in the defense, contending that such an expert could have "contradict[ed] the victim's statements, and offer[ed] proof that the stories they were telling were not true based on medical science." Petitioner's trial attorney admitted no medical expert was consulted, and explained this decision as follows:

> After reviewing the discovery with [Petitioner], I told him that we could use state funds to hire a medical expert and/or a private investigator to assist us in preparing a defense for trial. [Petitioner] was adamant that he did not want to go to trial because he did not want to face his family members. He told me he knew how painful a trial would be for his wife and family, and he asked me to work to resolve the case as quickly as possible. At that point, he was extremely remorseful for what he had done. [Petitioner] also wanted to resolve the case quickly because he believed he would soon die of renal failure, and did not want his last months consumed by a trial that would further alienate him from his family. Therefore, I did not hire a medical expert, but instead focused my efforts on securing the best possible plea deal for [Petitioner]

Resp. Exh. 122, pp. 2-3.

Moreover, Petitioner again fails to show what, if any, admissible exculpatory evidence might have been obtained from a medical expert. To the contrary, the PCR record indicates a medical expert would not likely have proved beneficial to Petitioner's case. Petitioner's PCR counsel did secure the services of a qualified medical expert to review medical records and interviews of the victims. Resp. Exh. 108, p. 3. After consultation with the medical expert, PCR counsel concluded that Petitioner could not state a viable legal ground for relief under the Oregon post-conviction statutes. Resp. Exh. 108, p. 3.

12 - FINDINGS AND RECOMMENDATION -

Finally, Petitioner has not demonstrated that, had trial counsel interviewed the unnamed witness or secured the services of a medical expert, Petitioner would have decided to proceed to trial. As trial counsel's statement indicated, Petitioner did not want to go trial because he did not want to face family members whose children he had been charged with sexually abusing. In addition, Petitioner admitted to police that he committed the acts charged as to at least three of the victims. Resp. Exh. 123, pp. 9-11. Finally, the prosecutor informed trial counsel that if the case were to proceed to trial, Petitioner would be facing additional charges involving additional children who made allegations against him. Resp. Exh. 122, p. 3.

In Ground Three, Petitioner alleges trial counsel was ineffective because his guilty plea was not made voluntarily. Petitioner argues that he would not have received any different sentence had he proceeded to trial and lost on every count, and that he was "forced into taking the deal after he had not even understood the charges, or the ramifications of a plea of no contest." Similarly, in Ground Four Petitioner alleges trial counsel was ineffective because she failed to ensure Petitioner understood the ramifications of his plea. He contends he had no idea he was accepting a plea deal for 900 months, and that "[t]here was no evidence to controvert [his] statement that he did not understand the totality of the plea."

In fact, ample evidence contradicts Petitioner's claim that counsel failed to ensure his guilty plea was knowing, intelligent, and voluntary. In her affidavit, trial counsel explained the steps she took to ensure that Petitioner understood the terms and consequences of the plea agreement:

> [Petitioner] alleges that I failed to ensure that he understood the ramifications of his plea agreement. However, I reviewed each line of the plea agreement and the various ramifications with [Petitioner] with a court-certified interpreter well before actual sentencing took place. At no point, did [Petitioner] indicate that he did not

13 - FINDINGS AND RECOMMENDATION -

> understand the agreement. I told him that, under the terms of the agreement, he would likely be sentenced to 900 months of incarceration. I understood this to be an effective life sentence, especially in light of [Petitioner's] kidney problems. I informed [Petitioner] of that difficult fact as he considered the plea offer. I also stated that fact at the plea hearing. I do not believe that [Petitioner] failed to understand the ramifications of his plea agreement.

Resp. Exh. 122, pp. 3-4.

Prior to the plea hearing, Petitioner signed plea petitions that stated that he offered his pleas "voluntarily" and "with full knowledge and understanding of all the matters set forth in the indictment and in this affidavit. . . ." Resp. Exh. 104, pp. 2, 6. At the plea hearing, the trial judge engaged in an extensive colloquy with Petitioner about the terms of the plea agreement and his understanding thereof; Petitioner agreed that he had a full and complete opportunity to discuss the plea agreement with counsel, that he was satisfied with counsel's advice, that he was aware of the trial rights he was giving up as a consequence of his plea, that no one had forced him or made any threats that caused him to enter the plea, that he was entering the plea because he believed that, if he went to trial, he would be found guilty of the charged offenses, and that he understood the trial judge would impose the sentence stipulated to by the parties. Resp. Exh. 106, pp. 6-10.

In contrast, with the exception of his own, self-serving statements, Petitioner presents no evidence that he did not understand the nature of the plea agreement. Finally, he has also failed to show that, but for counsel's representation, he would have rejected the plea offer and proceeded to trial.

Petitioner has not established that his ineffective assistance of trial counsel claims alleged in Grounds One, Two, Three, and Four are substantial as required by *Martinez*. Accordingly, any

14 - FINDINGS AND RECOMMENDATION -

ineffective assistance of PCR counsel does not constitute cause to excuse Petitioner's procedural default of these claims.

### 2. Ground Seven - Cruel and Unusual Punishment

In Ground Seven, Petitioner alleges his sentence amounted to cruel and unusual punishment. Petitioner procedurally defaulted this claim because he did not pursue a direct appeal. *See Kellotat v. Cupp*, 719 F.2d 1027, 1080 (9th Cir. 1983) (in Oregon, claims of trial court error must be exhausted through a direct appeal); *see also Marsing v. Belleque*, Case No. 1:07-cv-00705-CL, 2014 WL 6633102, *7 (D. Or., Nov. 21, 2014) (sentencing challenges must be raised on direct appeal in Oregon). This procedural default cannot be excused under *Martinez*. *See Martinez*, 132 S. Ct. at 1320 (explaining that only the default of "substantial claim of ineffective assistance at trial" may be excused). Petitioner submits no other facts or argument to otherwise establish cause and prejudice. Accordingly, Petitioner cannot obtain habeas corpus relief on the claim alleged in Ground Seven.

## II. Failure to State a Claim - Grounds Five, Six, and Eight

In Ground Five, Petitioner alleges his federal due process rights were violated because the PCR trial court failed to hold a hearing on the merits of the claims contained in his PCR petition. As noted, the PCR trial court dismissed Petitioner's petition on procedural grounds under Or. Rev. Stat. § 138.580 because Petitioner failed to attach supporting documentation to his petition.

Petitioner's claim of due process violations in the state PCR proceeding is not cognizable under § 2254. "[A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Cooper v. Nevin*, 641 F.3d 322, 331-32 (9th Cir.)

(citing *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989), *cert. denied*, 132 S. Ct. 558 (2011); *see also Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998) ("this court has specifically stated that federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings") (citations omitted), *cert. denied*, 526 U.S. 1123 (1999). Accordingly, Petitioner is not entitled to habeas relief on the claim alleged in Ground Five.

In Ground Six, Petitioner alleges ineffective assistance of post-conviction counsel at the PCR trial stage. Outside the context of *Martinez v. Ryan*, discussed above, "[t]here is simply no constitutional right to an attorney in a state post-conviction proceeding." *Ortiz*, 149 F.3d at 939 (citing *Coleman*, 501 U.S. at 752); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[w]e have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions . . . and we decline to so hold today"); *Tillet v. Freeman*, 686 F.2d 106, 108 (3d Cir. 1989) (a claim of ineffective assistance of collateral post-conviction counsel is not a cognizable basis for federal habeas corpus relief, it is at most one arising under state law). Accordingly, Petitioner fails to state a claim in Ground Six upon which relief may be granted under § 2254. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam) (since the petitioner had no constitutional right to counsel in the state proceeding, he could not be deprived of the effective assistance of counsel and district court was correct in dismissing habeas petition).

In Ground Eight, Petitioner alleges he was denied his federal due process rights because appellate counsel in the PCR proceeding filed a *Balfour* brief on Petitioner's behalf. To the extent this claim is construed as an allegation of ineffective assistance of counsel, Petitioner has no constitutional right to counsel during the appeal of the PCR judgment. *Ortiz*, 149 F.3d at 939;

*Coleman*, 501 U.S. at 755-57. To the extent the claim is construed as a procedural due process challenge to the use of the *Balfour* procedure in a PCR appeal, such error is not cognizable under § 2254. *Cooper*, 641 F.3d at 331-32. Accordingly, Petitioner fails to state a claim upon which habeas corpus relief may be granted in Ground Eight.

## II.     Statute of Limitations - Ground Nine

Finally, in Ground Nine Petitioner claims ineffective assistance of counsel based upon trial counsel's alleged actual conflict of interest. Petitioner did not allege Ground Nine in his original *pro se* Petition, it was not until he filed his Amended Petition on May 22, 2014, that he set forth this claim.

The AEDPA provides for a one-year statute of limitations to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). Under the statue, the one-year period begins to run from the date the criminal judgment of conviction become final at the conclusion of direct review "or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

The limitations period is subject to statutory tolling during the pendency of a properly filed post-conviction proceeding or other collateral review.[4] 28 U.S.C. § 2244(d)(2). However, time elapsed after the judgment of conviction becomes final and before the state PCR filing, as well as time after final collateral disposition and before federal filing counts against the year. 28 U.S.C.

---

[4]The limitations period may also be equitably tolled in appropriate circumstances. *Holland v. Florida*, 560 U.S. 631, 647 (2010). A habeas petitioner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Petitioner does not allege any facts supporting a claim of equitable tolling.

17 - FINDINGS AND RECOMMENDATION -

§ 2244(d)(2); *Nino v. Galaza*, 183 F.3d 1003, 1006-07 (9th Cir. 1999), *cert. denied*, 529 U.S. 1104 (2000).

Petitioner's judgment of conviction was entered on June 20, 2008. Petitioner had 30 days to pursue a direct appeal, but declined to do so. As such, the limitation period began to run on July 20, 2008. Petitioner signed his PCR petition 255 days later, on April 1, 2009. The limitation period was tolled until the appellate judgment issued in the PCR proceedings, on September 20, 2012. While Petitioner filed his original habeas Petition containing the first eight claims in this Court on November 2, 2012, he did not file his Amended Petition adding Ground Nine until May 22, 2014, after a total of 864 days elapsed.

Petitioner does not dispute that the claim alleged in Ground Nine is not timely on its own, but argues that the claim relates back to Ground Three alleged in the original Petition. Under Fed. R. Civ. P. 15(c)(1)(B), an amendment to a pleading "relates back" to the date of the original pleading if the amendment asserts a claim "that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading. . . ."

In the context of a § 2254 habeas corpus action, a claim in an amended habeas petition will relate back to the original habeas petition only if "the original and amended petitions state claims that are tied to a common core of operative facts . . . ." *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (construing Rule 15 in the context of the § 2244(d) limitation period and Rule 2(c) of the Rules Governing Habeas Corpus Cases which provides that a federal habeas petition must "specify all the grounds for relief available" and "state the facts supporting each ground"). "A petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance

18 - FINDINGS AND RECOMMENDATION -

in the original petition, and then amending the petition to assert another ineffective assistance claim based on an entirely distinct type of attorney misfeasance." *U.S. v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005), *cert. denied*, 547 U.S. 1217 (2006); *see also Schneider v. McDaniel*, 674 F.3d 1144, 1152 (9th Cir.) (holding that a claim alleging trial counsel's failure "to prepare" the petitioner's defense did not relate back to a claim alleging trial counsel's failure "to investigate" the petitioner's defense), *cert. denied*, 133 S. Ct. 579 (2012).

Here, Petitioner alleged in Ground Three of the original Petition that trial counsel was ineffective because his guilty plea was not made voluntarily. In his "Supporting Facts" to Ground Three, Petitioner refers to the length of the sentence he received and contends that it was effectively no better than the sentence he would have received had he gone to trial and been convicted on every count. In Ground Nine, Petitioner alleges his trial counsel "suffered from an actual conflict of interest which caused her to act in opposition to the best interests" of Petitioner. In support of this allegation, Petitioner states that his need for frequent dialysis placed financial pressures on the county jail while he awaited trial, and that his attorney should have used delay as a tactic to obtain more favorable terms for the plea agreement. These facts are not part of the "common core of operative facts" relevant to the ineffective assistance claim alleged in Ground Three. As such, the claim alleged in Ground Nine does not relate back to the original Petition and must be denied as untimely.

## RECOMMENDATION

For these reasons, the Amended Petition for Writ of Habeas Corpus should be DENIED, and judgment of DISMISSAL should be entered.

Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should be DENIED. *See* 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due January 21, 2016. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 11th day of January, 2016.

John V. Acosta
United States Magistrate Judge